J-S26035-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                                    :                 PENNSYLVANIA
                                                    :

v.                                               :

ROGEL I. SUERO                          :

              Appellant            :     No. 2568 EDA 2017

Appeal from the PCRA Order July 24, 2017
In the Court of Common Pleas of Northampton County Criminal Division
at No(s): CP-48-CR-0001552-2013

BEFORE:   BENDER, P.J.E., BOWES, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:          **FILED AUGUST 22, 2018**

Appellant, Rogel I. Suero, appeals from the order entered in the Court of Common Pleas of Northampton County dismissing his first petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9545. We affirm.

This Court has previously set forth the underlying facts and procedural history attendant to Appellant's trial as follows:

> On January 15, 2012, Suero, his co-defendant Rebecca Johnson, and two other individuals conspired to rob Johnson's grandmother, Carrie Smith. Ms. Smith suffered from preexisting medical conditions of the heart and lungs, including coronary artery disease, atrial fibrillation, and interstitial lung disease. Notes of Testimony ("N.T."), 10/2/2013, at 107. In the early morning hours of January 15, 2012, Suero and an unknown individual entered Ms. Smith's residence. Ms. Smith called 911 and told the police officers who responded that she was awoken by two males entering her bedroom. N.T., 10/1/2013, at 11. Ms. Smith stated that one man wore a dark, hooded sweatshirt and that the other had blue surgical gloves on his hands. *Id.* at 12.

_____

\*   Former Justice specially assigned to the Superior Court.

The man wearing the sweatshirt told her to remain quiet, and he placed a pillow over her face. When he removed the pillow, he told Ms. Smith that she would not be harmed if she cooperated.

Ms. Smith reported that the man in the sweatshirt demanded to know the location of her safe, and that the other man searched through her dressers while she led the first man to her safe. *Id.* at 13. When she struggled to remember the safe's combination, the man threatened her, and Ms. Smith felt a cold, hard object against the back of her head, which she believed to be a firearm. *Id.* at 14. After she opened the safe, Ms. Smith remembered seeing the individual wearing the blue surgical gloves reaching into the safe and removing her belongings. The men took approximately $35,000.00 cash from the safe. After removing the contents of the safe, the men took Ms. Smith back to her bedroom, then fled from the residence.

Ms. Smith suffered a heart attack during or shortly after the robbery, and she was hospitalized several times over the subsequent weeks. On March 16, 2012, Ms. Smith died of exacerbation of congestive heart failure as a result of the heart attack suffered on January 15, 2012. N.T., 10/2/2013, at 131.

The Commonwealth's theory of the case was that Suero and Rebecca Johnson conspired to commit the robbery because they planned to travel to Colorado to purchase a large amount of marijuana, and that they needed a substantial sum of money to accomplish that goal. Brief for Commonwealth at 25. At trial, the Commonwealth called Steven Wilson as a witness, who testified that Suero and Johnson had attempted to solicit his aid in a marijuana distribution scheme. N.T., 10/1/2013, at 204. Mr. Wilson testified that the quantity of marijuana that Suero and Johnson sought to acquire would have a value of approximately $400,000.00. *Id.* at 210. The Commonwealth introduced this evidence to demonstrate the defendants' motive for the robbery, as it was "evidence tending to show that [Suero] and his co-defendant were in need of obtaining a substantial sum of money to make their marijuana purchase." Brief for Commonwealth at 25.

Prior to trial, Suero moved to exclude Mr. Wilson's testimony as inadmissible evidence of prior bad acts pursuant to Pa.R.E. 404(b)(1). The trial court denied Suero's motion, finding that the evidence was relevant to motive and that the probative value of

Wilson's testimony outweighed any prejudice to Suero. Suero also moved to exclude evidence of certain prison phone calls, during which Rebecca Johnson implicated Suero in the crimes. The trial court permitted the introduction of the calls, provided that the transcripts of the calls be redacted in a manner that would remove any reference to Suero.

On September 30, 2013, Suero and Johnson proceeded to a joint trial, which lasted for six days. During closing arguments, the attorney for the Commonwealth made several statements that Suero alleged to be inflammatory. After closing arguments were completed, Suero objected to the statements and moved for a mistrial, arguing that the assistant district attorney, *inter alia,* misrepresented testimony, stated her personal beliefs about the credibility of witnesses, and improperly commented upon Suero's demeanor during the trial. The parties agreed on a number of curative instructions, and the trial court proceeded to instruct the jury accordingly. The jury returned a verdict that same day, finding Suero guilty of the above-listed charges. Suero's co-defendant, Rebecca Johnson, was also convicted of numerous offenses in connection with the incident, and was sentenced to a term of life imprisonment.

On December 5, 2013, the trial court sentenced Suero to, *inter alia,* life imprisonment without the possibility of parole. On December 16, 2013, Suero filed post-sentence motions, which the trial court denied on March 24, 2014.

*Commonwealth v. Suero*, No. 1025 EDA 2014, unpublished memorandum at *1–2 (Pa. Super. filed Feb. 23, 2015).

Suero timely filed a notice of appeal, and he asserted, *inter alia*, that the trial court erred when it neither granted Appellant's motion for mistrial nor declared a mistrial *sua sponte* for inflammatory prosecutorial remarks and conduct at closing. This Court deemed the first part to Appellant's issue waived, as counsel agreed to withdraw the motion for a mistrial in exchange for a curative instruction. Specifically, the instruction directed the jury to disregard completely the prosecutor's comments about what a prospective

witness might have said and which witnesses were believable, as it was for the jury, alone, to determine credibility. Moreover, after the court gave the desired instructions, counsel failed to make a timely and specific objection that the instruction inadequately addressed his concerns, we observed.

Regardless of counsel's withdrawal of the mistrial motion, Appellant argued in the alternative, the court was obligated to *sua sponte* declare a mistrial given the manifest necessity for one created by the prosecutor's gross misconduct. This argument, we noted, "ignores a defendant's role in determining the best course of action in response to an allegedly prejudicial event." *Id.* at *5. Moreover, we concluded that Appellant still received a fair trial notwithstanding any culpability of the prosecutor in mischaracterizing the victim's statements to investigators. Though perhaps not entirely accurate, the characterizations were not designed to deprive Appellant a fair trial, did not have the unavoidable effect of prejudicing the jury against Appellant, and were addressed by the jury instructions.

As for the prosecutor's stated personal opinion about the credibility of Appellant's testimony, we determined that the court sufficiently mitigated the influence of the statement by both reminding jurors they were the sole judges of credibility and declaring as "immaterial" any attorney opinion regarding the believability of a witness. *Id.* at *8. The instruction, we found, was clear and particular, and the law presumes a jury follows such instructions. Accordingly, we discerned no reversible error with the court's failure to declare a mistrial *sua sponte*.

Finding no merit to the remaining issues raised on direct appeal, we affirmed judgment of sentence on February 23, 2015. Appellant filed a petition for allowance of appeal to the Pennsylvania Supreme Court, which denied Appellant's PAA on July 21, 2015.

On March 25, 2016, Appellant filed his first PCRA petition. The PCRA court appointed counsel, who filed an amended petition on June 13, 2016. Appointed counsel informed the PCRA court, however, that Appellant desired privately retained counsel instead, and, after a hearing on the matter, the court granted Appellant's request to retain new counsel. On October 6, 2016, private counsel entered her appearance and requested both additional time to file an amended petition and a continuance of a scheduled hearing on Appellant's petition, which the court granted.

Counsel filed her amended petition on January 30, 2017, and the court conducted an issue-framing conference on February 10, 2017. A two-day hearing on the issues raised in the amended petition commenced on May 8, 2017. The court thereafter accepted party briefs, and on July 24, 2017, entered an order and opinion dismissing Appellant's petition as devoid of merit. This timely appeal follows.

Appellant presents the following questions for our consideration:

I. **WAS TRIAL COUNSEL (LAUER) INEFFECTIVE AS COUNSEL FOR FAILING TO INVESTIGATE AND TO RETAIN EXPERTS TO CHALLENGE CAUSATION AT TRIAL AND DID THE PCRA COURT ABUSE ITS DISCRETION IN DETERMINING, FIRSTLY, THAT THERE WAS NO PREJUDICE BECAUSE OF A JURY'S**

**DETERMINATION IN ANOTHER CASE AND, SECONDLY, IN CREDITING TRIAL COUNSEL'S TESTIMONY THAT HE CONSULTED AN EXPERT TO CHALLENGE CAUSATION?**

II.   **WAS TRIAL COUNSEL (LAUER) INEFFECTIVE AS COUNSEL FOR FAILING TO CALL AN ALIBI WITNESS AT TRIAL AND DID THE TRIAL COURT ABUSE HER DISCRETION IN DETERMINING THAT LAUER WAS NOT AWARE OF THE WITNESS UNTIL AFTER TRIAL, THAT THE ALIBI WITNESS WAS NOT CREDIBLE, AND IN DETERMINING THAT THERE WAS A STRATEGIC REASON FOR NOT CALLING AN ALIBI WITNESS?**

III.   **WAS TRIAL COUNSEL (LAUER) INEFFECTIVE AS COUNSEL FOR WITHDRAWING HIS REQUEST FOR A MISTRIAL FOLLOWING PREJUDICIAL STATEMENTS BY THE PROSECUTOR AND DID THE TRIAL COURT COMMIT LEGAL ERROR IN DETERMINING THAT THE ISSUE WAS PREVIOUSLY LITIGATED ON DIRECT APPEAL?**

IV.   **WAS TRIAL COUNSEL (LAUER) INEFFECTIVE AS COUNSEL FOR FAILING TO OBJECT TO IMPROPER LEADING QUESTIONS BY THE PROSECUTOR?**

V.   **WAS PETITIONER/APPELLANT ENTITLED TO RELIEF BECAUSE OF THE CUMULATIVE PREJUDICIAL EFFECT OF THE ERRORS IN THIS CASE?**

Appellant's brief at 4.

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. ***Commonwealth v. Conway***, 14 A.3d 101 (Pa.Super. 2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings.

*Commonwealth v. Boyd*, 923 A.2d 513 (Pa.Super. 2007). The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions. *Commonwealth v. Roney*, 79 A.3d 595, 603 (Pa. 2013).

With respect to issues two through five, after careful review of the record, the parties' briefs, and the PCRA court's opinion, we affirm on the basis of the opinion by the Honorable Paula A. Roscioli. *See* PCRA Ct. Op. at 8-15 (concluding: (1) trial counsel was not ineffective for failing to call Mr. Sylvestre as an alibi witness where counsel testified such an alleged alibi was not brought to his attention during trial, and even if it had been, presenting alibi would have allowed Commonwealth to introduce as rebuttal evidence theretofore excluded evidence of Appellant's cellular phone location data putting him at the scene of the crime; (2) trial counsel was not ineffective for withdrawing his request for mistrial on the basis of prosecutorial misconduct stemming from the Commonwealth's closing remarks;[1] (3) counsel reasonably elected against objecting to leading questions put to a medical expert as to the medical cause of the victim's death, as such evidence was irrelevant to Appellant's innocence defense; and (4) Appellant is not entitled to relief on his

---

[1] We agree with Appellant that our decision on direct appeal rejecting Appellant's claim of prosecutorial misconduct on the merits does not render the present ineffective assistance claim "previously litigated" for purposes of PCRA review, *see Commonwealth v. Collins*, 888 A.2d 564 (Pa. 2005) (deeming PCRA claims distinct from underlying substantive claims raised on direct appeal). Nonetheless, under the present facts, we discern no arguable merit to the present claim where counsel elected to withdraw his motion regarding comments not rising to the level of misconduct.

claim of cumulative prejudicial effect of trial counsel's error, as counsel's actions were not erroneous but were, instead, based on reasonable strategies).

As for Appellant's first issue asserting that counsel ineffectively failed to retain a medical expert to challenge the Commonwealth's theory pertaining to the victim's cause of death, we likewise adopt the trial court's opinion rejecting such claim, but we add to the discussion as follows.

The law presumes counsel has rendered effective assistance. *Commonwealth v. Williams*, 597 Pa. 109, 950 A.2d 294 (2008). When asserting a claim of ineffective assistance of counsel, a petitioner is required to make the following showing: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and, (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *Commonwealth v. Kimball*, 555 Pa. 299, 312, 724 A.2d 326, 333 (1999). The failure to satisfy any prong of the test for ineffectiveness of counsel will cause the claim to fail. *Williams, supra*.

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit...." *Commonwealth v. Pierce*, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Taylor,*

*supra* at 1042 (quoting **Commonwealth v. Poplawski**, 852 A.2d 323, 327 (Pa.Super. 2004)).

> Once this threshold is met we apply the "reasonable basis" test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective.

**Pierce, supra** at 524, 645 A.2d at 194-95 (internal citations omitted).

> Prejudice is established when [a defendant] demonstrates that counsel's chosen course of action had an adverse effect on the outcome of the proceedings. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In [**Kimball, supra**], we held that a "criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

**Commonwealth v. Chambers**, 570 Pa. 3, 21-22, 807 A.2d 872, 883 (2002) (some internal citations and quotation marks omitted).

"The petitioner bears the burden of proving all three prongs of the test." **Id.** "Where it is clear that a petitioner has failed to meet any of the three, distinct prongs of the... test, the claim may be disposed of on that basis alone, without a determination of whether the other two prongs have been met." **Commonwealth v. Basemore**, 560 Pa. 258, 295, 744 A.2d 717, 738 n.23 (2000).

Appellant posits the PCRA court abused its discretion when it concluded trial counsel was not ineffective for failing to challenge the Commonwealth's evidence that Appellant's actions on the night of the robbery caused Ms.

Smith's death two months later.  According to Appellant, trial counsel's case file showed that he recognized causation was a critical issue but failed to conduct an adequate pre-trial investigation into the issue.

Alluding to counsel's case file, Appellant avers that trial counsel corresponded only once with a medical expert—Dr. John Shane, a forensic and clinical pathologist, provided Dr. Shane with only Ms. Smith's autopsy report, and never received Dr. Shane's opinion on causation.  The PCRA court erred, Appellant continues, by crediting trial counsel's testimony that Dr. Shane did, in fact, opine in a follow-up conversation with counsel that Ms. Smith's heart attack on the night of the robbery probably contributed to her death.  The record belied counsel's testimony that such a conversation took place, Appellant claims, because counsel's otherwise "meticulous" case file includes no notation of the purported follow-up conversation despite the great impact it would have had on the defense.  *See* Appellant's brief, at 35.

Appellant also assails trial counsel's failure to present to the jury the threory, whether through cross-examination of the Commonwealth's experts or through direct examination of defense experts, that the robbery had no effect on Ms. Smith's pre-existing and progressively debilitating pulmonary fibrosis, a condition which bore significantly on her cardiac health, Appellant argues.  On this point, Appellant refers to the PCRA testimonies of internist, Edward D. Viner, M.D., and Cardiologist Arnold Meshkov, M.D., who each pointed to Ms. Smith's pulmonary fibrosis as the cause of her death.

At the PCRA hearing, Dr. Meshkov testified that Ms. Smith had suffered "a very mild heart attack" during the robbery, but she recovered with no consequential heart damage. N.T. 5/9/17, at 81-82. Moreover, Dr. Meshkov disputed the radiologist's impression of congestive heart failure made from Ms. Smith's chest x-rays taken on her admission two weeks after the heart attack. Instead, the x-rays depicted the progression of pulmonary fibrosis, the scar tissue from which is often mistaken for congestive heart failure-related fluid in the lungs, Dr. Meshkov opined. N.T. 5/9/17 at 83. Dr. Meshkov, therefore, testified that had counsel retained him prior to trial, he would have opined to a reasonable degree of medical certainty that Ms. Smith's death was caused by pulmonary fibrosis and not the heart attack she sustained during the robbery. N.T. at 5/9/17 at 88-89.

Similarly, Dr. Viner testified that Ms. Smith's idiopathic pulmonary fibrosis evolved and progressed in a manner completely unaffected by the trauma or emotions she experienced during the robbery. N.T. 5/9/17 at 114. The shortness of breath Ms. Smith experienced two weeks after the robbery was, therefore, in his opinion, a product of her pulmonary fibrosis and unrelated to her fear and depression experienced after the robbery and heart attack. N.T. at 120-123. Given the absence of the symptomology typically associated with heart failure, Dr. Viner opined that Ms. Smith's heart attack of January 15, 2012, did not cause any damage to her heart. N.T. at 128. As such, he concluded to a reasonable degree of medical certainty that Ms. Smith

died from pulmonary fibrosis, and he confirmed he would have offered that opinion at Appellant's trial had counsel retained him. N.T. at 130-131.

Given both the conflicting record as to whether counsel's expert ever opined on causation, and the availability of other experts who would have denied causation, Appellant asserts the PCRA court erred when it concluded counsel employed a reasonable trial strategy causing no prejudice to Appellant.

In response, the Commonwealth argues the record shows trial counsel engaged in a reasonable investigation into the issue of causation. In counsel's 49 years of practicing criminal law, he had retained Dr. Shane numerous times for testimony regarding medical causation, the Commonwealth contends. *See* Appellee's brief, at 12 (citing N.T. 5/8/17 at 3, 15, and 50). Trial counsel was quite specific in recounting Dr. Shane's expert opinion, the Commonwealth continues, that the Commonwealth could make "a very clear case that [the robbery] was a very substantial contributing factor to [Ms. Smith's] death." *Id.* (citing N.T. at 18). While Dr. Shane acknowledged a case could be made for either side, counsel testified, the doctor nevertheless opined that the medical evidence sufficed to prove the element of causation. *Id.* (citing N.T. at 19). Trial counsel explained he, therefore, did not request a report from Dr. Shane because that would have required him to produce what would have been, at best, an unhelpful report, the Commonwealth notes. *Id.* (citing N.T. at 19).

In light of Dr. Shane's unfavorable communication to counsel, the Commonwealth posits, it was a reasonable strategy for counsel to focus the jury's attention on Appellant's assertion of innocence. *See* Appellant's brief, at 13.

The Commonwealth also challenges the notion that Appellant suffered prejudice from trial counsel's chosen course. In so doing, the Commonwealth relies on the PCRA court's opinion that Appellant failed to demonstrate a reasonable probability that the jury would have acquitted him of second-degree murder had he actively investigated and advanced a causation defense.

In reaching this conclusion, the PCRA court took judicial notice of the trial of Quadir Taylor, Appellant's cohort in the robbery of Ms. Smith. Taylor faced the same charges as Appellant, but unlike Appellant, Taylor admitted his participation in the robbery and chose, instead, to defend against the murder charge solely on the issue of causation. Taylor sought to advance his defense through the medical expert testimonies of Drs. Meshkov and Viner, who rendered the same opinions at Taylor's trial as they did at Appellant's PCRA hearing. Nevertheless, a jury convicted Taylor of second-degree murder.

The PCRA court, therefore, came to the following conclusion with respect to Appellant's prejudice claim:

> Given the outcome of the Taylor trial, we cannot conclude that there is a *reasonable probability*, had Attorney Lauer called Drs. Viner and Meshkov at [Appellant's] trial, that the outcome of that

proceeding would have been different. While it is possible that a different jury may have reached a different conclusion when presented with the same causation evidence as that presented at the Taylor trial, we are not concerned with that which is in the realm of possibility, but with that which is reasonably probable. Accordingly, [Appellant] has failed to establish that he was prejudiced by trial counsel's failure to more strenuously pursue a defense on the issue of causation, and his petition must fail. [*See Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052 (1984) (setting forth prejudice standard in ineffectiveness claim)].

PCRA Court Opinion, 7/24/17, at 6.

Here, the PCRA court made a credibility determination in favor of trial counsel and his assertion that he discussed the causation issue extensively with Dr. Shane but obtained an unfavorable expert medical opinion from the doctor that would not help the defense. Appellant asks us to undo the court's credibility determination because trial counsel did not document his discussion with Dr. Shane in the case file as he had done with respect to other aspects of the case. This purported inconsistency between counsel's testimony and his practice of documenting his work on the case undermines the reliability of counsel's testimony, Appellant maintains.

We disagree that trial counsel was under an obligation to corroborate his testimony with a case file entry memorializing his conversation with Dr. Shane in order to maintain credibility on this point. Indeed, counsel explained in a related context that he deliberately declined to ask Dr. Shane for a written report documenting the doctor's observations and impressions so he would not be compelled to turn over the potentially damaging report. The PCRA court was free to conclude that counsel similarly preferred to leave his

- 14 -

discussion with Dr. Shane undocumented, as well, as it represented a dead-end for the defense.

Contrary to Appellant's assertion, therefore, the record neither belies counsel's explanation for foregoing a more aggressive causation defense nor demonstrates the unreasonableness of counsel's strategic decision to concentrate, instead, on an innocence defense. Under our standard of review, as long as the chosen course had some reasonable basis designed to effectuate the client's interest, then our inquiry ceases. ***Pierce***, ***supra***. Accordingly, we discern no abuse of discretion in the PCRA court's rejection of Appellant's first ineffectiveness claim.[2]

Therefore, because we find no abuse of discretion or error of law with the PCRA court's order below, we affirm.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/22/18

_____

[2] Even if we addressed Appellant's prejudice prong argument, which we need not do having found counsel employed a reasonable strategy, we discern no abuse of discretion reflected in the PCRA court's rationale that Appellant failed to show a reasonable probability that Dr. Meshkov's and Dr. Viner's testimonies would have secured a favorable result for Appellant at trial.

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY
COMMONWEALTH OF PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA :
:  No.  C-48-CR-01552-2013
v. :
:
ROGEL I. SUERO, :
:
Defendant. :

## OPINION OF THE COURT

This matter has come before the Court on Defendant Rogel Suero's supplemental petition for post-conviction collateral relief, filed January 30, 2017, pursuant to 42 Pa.C.S. § 9541 *et seq.* Upon careful review, we find that Defendant is not entitled to relief.

## I.  Factual and Procedural History

Defendant Rogel Suero (Defendant) was convicted on October 7, 2013, following a jury trial, of the crimes of second degree murder, aggravated assault, robbery, conspiracy to commit robbery, burglary, conspiracy to commit burglary, criminal trespass, theft by unlawful taking, possession of instruments of crime, terroristic threats, and recklessly endangering another person, all arising from the home invasion robbery and later death of Carrie Smith. Ms. Smith was the grandmother of co-defendant Rebecca Johnson. Defendant and Ms. Johnson were tried at a joint trial. Quadir Taylor was also a participant in the robbery, and was ultimately convicted of related charges after a jury trial on January 13, 2017.



David Bechtold, a then-juvenile defendant also involved in the robbery, entered a guilty plea on related charges prior to the Suero/Johnson trial.

On December 5, 2013, Defendant was sentenced to a period of incarceration in a state correctional institution for the remainder of his life, without the possibility of parole, on the charge of second-degree murder. He was further sentenced to 60-120 months on the charge of aggravated assault, an additional 48-96 months on the charge of conspiracy to robbery, and an additional 9-24 months on the charge of possession of instruments of crime. No further penalty was imposed for the remaining charges, all of which merged for sentencing purposes.

Defendant filed post-sentence motions, all of which were denied by this Court on March 24, 2014. On February 23, 2015, the Superior Court affirmed. Defendant filed a petition for allowance of appeal to the Pennsylvania Supreme Court, which was denied on July 21, 2015. On or about March 25, 2016, Defendant filed a *pro se* petition for collateral review pursuant to the Pennsylvania Post-Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq*. Defendant was appointed counsel and an issue framing conference was held on May 13, 2016. Appointed counsel filed an amended petition on June 13, 2016. By way of correspondence dated June 24, 2016, appointed counsel informed the Court that Defendant wished to seek private counsel. A hearing was scheduled on Defendant's PCRA petition for August 16, 2016, allowing Defendant time to retain new counsel. On July 22, 2016, at Defendant's request, the hearing was continued

to October 28, 2016. On October 6, 2016, present counsel entered her appearance, and requested both an opportunity to file an additional counselled petition and a continuance of the hearing. Counsel was granted an extension to December 31, 2016 to file an amended petition, and the hearing was continued generally. On or about November 21, 2016, counsel requested a further extension to January 31, 2017, which was granted. The instant petition was filed January 30, 2017. An issue-framing conference was held February 10, 2017. A hearing was held on May 8, 2017 and May 9, 2017. The Commonwealth submitted its brief in opposition to the petition on June 8, 2017, and the Defendant submitted his brief in support of the petition, after the grant of an extension of time, on June 22, 2017. The matter is now ready for disposition.

## II. Discussion

### A. Trial counsel was not ineffective in focusing the theory of the defense on Defendant's claim of innocence, nor in making strategic choices with that theory in mind.

In the first issue in his petition, defendant contends that trial counsel Philip D. Lauer, Esq. was ineffective insofar as he failed to present a defense on the issue of the cause of Carrie Smith's death. Defendant argues that while the Commonwealth's medical expert opined that Ms. Smith's death, two months after the robbery, was the ultimate result of a heart attack and related medical complications occasioned by the robbery, other medical experts would have testified that Ms. Smith's death was solely caused by medical conditions from which she suffered prior to the robbery.

Page 3 of 15

In considering this issue, we begin with the notion that counsel is presumed effective. *Commonwealth v. Breakiron*, 729 A.2d 1088 (Pa. 1999). In order to prevail on his petition for collateral relief on the basis of a claim of ineffective assistance of counsel, Defendant bears the burden of establishing that his counsel was ineffective, to such a degree that his ineffectiveness "so undermined the truth-determining process that no reliable adjudication or guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). Such a determination is made utilizing the well-known tripartite performance and prejudice test as set out in *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987), pursuant to which Defendant must show (a) that the claim underlying his claim of ineffectiveness has arguable merit, (b) that defense counsel's act or omission was not reasonably designed to advance Defendant's interests, and (c) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Where a defendant fails to establish even one of these factors, relief may not be granted.

Because we find that Defendant herein has failed to establish prejudice, we must deny relief with respect to this particular claim. Prejudice must be established by a showing that "but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." *Commonwealth v. Kimball*, 724 A.2d 326, 333 (Pa. 1999).

Quadir Taylor was a codefendant of Defendant and Rebecca Johnson, charged with the same crimes for which Defendant was convicted. At his trial in

Page 4 of 15

January 2017, Taylor admitted his participation in the home invasion robbery of Carrie Smith, defending against the second-degree murder charge solely upon the issue of causation.[1] Again, it is the element of causation against which Defendant herein contends that his trial counsel failed to effectively defend. In pursuit of his defense, Taylor called Drs. Edward Viner and Arnold Meshkov to testify. These are the same doctors proffered by Defendant in pursuit of the instant petition. In their testimony at the Taylor trial, Drs. Viner and Meshkov testified in substantially the same manner as they did at the hearing on the within petition. Notably, both doctors testified at the hearing in this matter that their testimony on that occasion was consistent with their testimony at the Taylor trial. N.T. 5/8/17, pp.98-99, 142. We note as an additional matter that Taylor's counsel thoroughly cross-examined the expert witnesses for the Commonwealth at the Taylor trial. See *Commonwealth v. Quadir Taylor*, CP-48-CR-00587-2016 (Northampton County 2017).

We take judicial notice *sua sponte*, pursuant to Pa.R.E. 201(c)(1), of the conviction of Quadir Taylor for the second-degree murder of Carrie Smith following a jury trial. The judicial record of that proceeding, including the trial transcript, may be judicially noticed. *Commonwealth v. Mutzabaugh*, 699 A.2d 1289 (Pa. Super. 1997).

---

[1] The delay between the Suero/Johnson trial in October 2013 and the Taylor trial in January 2017 was occasioned by the fact that Taylor remained unidentified to police until some time after the Suero/Johnson trial.



Given the outcome of the Taylor trial, we cannot conclude that there is a *reasonable probability*, had Attorney Lauer called Drs. Viner and Meshkov at Defendant's trial, that the outcome of that proceeding would have been different. While it is possible that a different jury may have reached a different conclusion when presented with the same causation evidence as that presented at the Taylor trial, we are not concerned with that which is in the realm of possibility, but with that which is reasonably probable. Accordingly, Defendant has failed to establish that he was prejudiced by trial counsel's failure to more strenuously pursue a defense on the issue of causation, and his petition must fail. *Commonwealth v. Strickland*, supra at 694.

While Defendant's failure to establish prejudice, alone, is a sufficient basis upon which we may deny post-conviction relief, we find as an additional matter that Defendant's claim of ineffectiveness on this issue likewise fails, at a minimum, to establish one any prong of the performance portion of the *Pierce* test, as we cannot conclude that Attorney Lauer's decision not to pursue a causation defense lacked a reasonable basis. "[W]here matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." *Commonwealth v. Colavita*, 993 A.2d 874, 887 (Pa. 2010).

At the hearing on the within petition, Attorney Lauer testified that, in preparing for trial, he evaluated the possibility of pursuing a defense on the issue of causation, and ultimately elected, after reviewing the medical records and after

Page 6 of 15

consultation with an expert in the field of clinical pathology and with other counsel, not to pursue such a defense. N.T. 5/8/17, pp.10-11, 17-18, 54. This decision by Attorney Lauer was based largely upon the expert's conclusion that there was sufficient medical evidence to show that the robbery was a "very substantial contributing factor" to Ms. Smith's death. N.T. 5/8/17, p.18. Strategically, Mr. Lauer believed that, because there was not a strong basis to challenge causation, the logical course was to test the Commonwealth's experts on cross-examination and otherwise focus the defense on Defendant's contention that he was not involved, both through Defendant's testimony and a thorough test of the credibility of the Commonwealth's fact witnesses who identified Defendant as a perpetrator. N.T. 5/8/17, pp.21-22, 29.

Based upon the record before us, we cannot conclude that Defendant has proven that trial counsel's strategic decision not to strenuously test the Commonwealth's causation evidence was so unreasonable that "no competent lawyer would have chosen it." *Commonwealth v. Rega*, 933 A.2d 997, 1018 (Pa. 2007). Furthermore, we conclude that trial counsel's choice not to strenuously defend on the issue of causation had "some reasonable basis designed to effectuate [Defendant's] best interests[.]" *Commonwealth v. Speight*, 677 A.2d 317, 322 (Pa. 1996). More specifically, we find that it was reasonable for trial counsel to focus Defendant's assertion innocence, which he believed, in his decades of experience, to have a significantly greater likelihood of success in this case than a challenge to causation. The choice to focus on a stronger defense of

innocence, in contrast to a weak defense on causation, was reasonable insofar as it made the stronger defense all the more credible. See, e.g., *Commonwealth v. Hawkins*, 894 A.2d 716 (Pa. 2006) (trial counsel reasonable in not seeking alibi instruction, so as not to draw attention to the weakness of the defendant's alibi evidence); *Commonwealth v. DeHart*, 650 A.2d 38 (Pa. 1994) (trial counsel not ineffective for admitting defendant was guilty of escape, in order to maintain credibility in denial of guilt on other more serious charges); *Commonwealth v. Garcia*, 535 A.2d 1186 (Pa. Super. 1988) (trial counsel not ineffective for pursuing defense of innocence to homicide charge rather than presenting heat of passion argument in support of voluntary manslaughter); *Commonwealth v. McGrogan*, 297 A.2d 456 (Pa. 1972) (trial counsel not ineffective in defending on the basis of innocence rather than pursuing compromise verdict of voluntary manslaughter).

Moreover, we cannot conclude that trial counsel's failure to object to leading questions posed by the District Attorney to the medical expert witnesses rendered counsel's representation of the Defendant ineffective. Again, counsel's strategy was to focus on the Defendant's contention that he was not involved in the robbery. To that end, the medical testimony regarding the causation of Ms. Smith's death was not objectionable to the defense and, as Attorney Lauer testified at the hearing on the instant petition, "since we weren't challenging it, there was no harm done [in allowing leading questions] and, in fact, it got it over quicker for her to just plow through the medical testimony." N.T. 5/8/17, p.37.

Page 8 of 15

This allowed the focus of the trial to lay largely on the question of who was responsible for the robbery, which was helpful to the chosen defense strategy. Furthermore, as Attorney Lauer testified, "[y]ou don't object just because something is leading. You object if there's a reason that you don't want it to come out that way." N.T. 5/8/17, p.39. While questions on direct examination should not be leading, there was nothing to be gained, in defense counsel's strategy, by objecting to the Commonwealth's leading questions to its medical experts. For all of these reasons, we find that Defendant's petition for post-conviction relief must be denied with respect to trial counsel's decision not to pursue a causation defense and his choice not to object to leading questions on direct examination.

**B. Trial counsel was not ineffective in choosing not to present an alibi witness who was not credible, and whose testimony would likely have opened the door to damaging rebuttal evidence.**

Defendant next contends that his trial counsel was ineffective in failing to present the testimony of Emmanuel Sylvestre, who was allegedly able to provide an alibi for Defendant insofar as Mr. Sylvestre contends that Defendant was at home with him at the time of the robbery.

Mr. Sylvestre testified at the hearing in this matter. In that testimony, Mr. Sylvestre indicated that he and Defendant became close friends in the months prior to the robbery, spending time together every day. N.T. 5/9/17, p.144. Mr. Sylvestre testified that he recalls spending the weekend with Defendant during the time when the robbery occurred. N.T. 5/9/17, pp.146-147. More specifically,

Mr. Sylvestre testified that he and Defendant closed the barbershop where Defendant worked at 8:00 p.m. on the night of the robbery, they drove to Defendant's apartment in Allentown, they ate and watched television, Mr. Sylvestre fell asleep on the couch at 1:00 a.m. after Defendant was asleep in his own bedroom, and at 8:00 a.m. the following day they woke up and went back to the barbershop. N.T. 5/9/17, pp.153-155.

Mr. Sylvestre testified that he assumed that Defendant would have told authorities that the two were together and that Mr. Sylvestre could provide an alibi, and was surprised during the trial to learn that Defendant could not specifically recall his whereabouts during the robbery. N.T. 5/9/17, pp.147-148. Mr. Sylvestre testified that, after the close of defense testimony, he approached Attorney Lauer on two occasions and informed him of the alibi testimony he could provide. N.T. 5/9/17, pp.149, 157.

Attorney Lauer did not call Mr. Sylvestre as a witness. When questioned about his reasoning in not calling this witness, Mr. Lauer testified that Mr. Sylvestre was not brought to his attention until after the trial, but that even if he had been brought to his attention during the trial, he would likely not have called that witness. N.T. 5/8/17, p.32. Mr. Lauer indicated that, because he had not been made aware of an alibi witness prior to trial, he had not given notice of an alibi witness, and would have had to seek relief from the alibi notice requirement in order to call an alibi witness. N.T. 5/8/17, p.60. He chose not to seek such relief due to his concern that the Commonwealth would seek, as a matter of

rebuttal, to introduce cellular phone location information related to the location of Defendant's phone just prior to, during, and just after the robbery, which evidence had previously been excluded from the trial on account of late notice. N.T. 5/8/17 pp.29-30, 32, 47-48, 60. Mr. Lauer was concerned about the possibility of the cellular phone location evidence being admitted because it was highly damaging to Defendant's theory of the case that he did not participate in the robbery, given the proximity of Defendant's phone to the scene of the robbery at the time it occurred. N.T. 5/8/17, p.32. Moreover, the testimony of Mr. Sylvestre as to Defendant's whereabouts would have been inconsistent with the cellular phone location evidence. *Id*.

We find this tactical decision on the part of Mr. Lauer to be eminently reasonable. First, the late revelation of Mr. Sylvestre's proffered alibi testimony, when he had ample prior opportunity to make such revelation, tended to color the testimony with incredibility. We note that Mr. Sylvestre's testimony at the hearing was further lacking in credibility in that his recollection of Defendant's whereabouts appeared largely based upon what he recalled that he and Defendant did on a routine basis rather than a specific recollection of the night on which the robbery occurred. More significantly, Mr. Lauer's concern regarding possible rebuttal evidence was valid, particularly given how closely it would place Defendant's phone to the scene of the robbery during the time it was being committed, which would only serve to damage the theory of the defense. Accordingly, we conclude that trial counsel's decision in this regard had a

Page 11 of 15

reasonable basis designed to protect Defendant's interests, and Defendant's petition on this point must therefore fail. See, e.g., *Commonwealth v. Peterkin*, 649 A.2d 121 (Pa. 1994) (trial counsel not ineffective for failing to call mitigating character witnesses at a capital sentencing proceeding where he held legitimate concerns that the cross-examination of those witnesses would be damaging to the defendant).

**C.** **The Superior Court has previously concluded that Defendant was not prejudiced by any alleged prosecutorial misconduct. Insofar as Defendant has raised herein an issue of prosecutorial misconduct that was not ruled upon by the Superior Court, there is insufficient evidence of record for this Court to rule on the merits.**

Defendant next contends that trial counsel was ineffective in withdrawing a motion for a mistrial, which motion had been made following allegedly inappropriate and prejudicial comments by the Assistant District Attorney during her closing argument. Because this issue has been previously litigated, we must deny Defendant's request for relief.

At trial, following the Commonwealth's closing argument, counsel for Defendant made a motion for a mistrial based upon a number of statements made therein. After a lengthy conference in chambers between the Court and all counsel, Attorney Lauer withdrew the motion, relying upon the curative jury instructions proposed by the Court in moving forward with the trial. In his post-sentence motion, Defendant nonetheless argued that he was entitled to a new trial on the basis of the prosecutor's inappropriate closing argument. Based upon

counsel's withdraw of the motion for a mistrial, we concluded that the issue was waived. On direct appeal, Defendant contended, in a related argument, that this Court erred in failing to *sua sponte* declare a mistrial on the basis of the prosecutor's inappropriate remarks. The Superior Court, too, found that the issue was waived as a result of counsel's presentation and later withdraw of the motion, but, moreover, the Superior Court addressed the Defendant's claims of prosecutorial misconduct *on their merits* and concluded, "after careful review" and a thorough discussion of each issue, "that the Commonwealth did not commit prosecutorial misconduct[.]" *Commonwealth v. Suero*, 1025 EDA 2014 (Slip op. at p.9).

In reaching this conclusion, the Superior Court thoroughly addressed the issues of (1) the prosecutor's alleged mischaracterization of the victim's statement about the skin color of one of the persons involved in the robbery; (2) the prosecutor's alleged statement of her personal opinion regarding the credibility of the Defendant's testimony; (3) the prosecutor's alleged mischaracterization of the testimony of witness Steve Wilson; and (4) the prosecutor's allegedly improper suggestion to the jury that they consider the demeanor of the Defendant during the playing of a 911 tape. The law regarding a defendant's entitlement to relief in post-conviction proceedings is clear that where a defendant's "claims were discussed thoroughly by [the Superior] Court in a memorandum affirming [the defendant's] judgment of sentence" those issues are considered "'finally litigated' and not subject to further review."

*Commonwealth v. Bond*, 630 A.2d 1281, 1282 (Pa. Super. 1993), <u>citing</u> 42 Pa.C.S. § 9543(a)(3).

While Defendant has attempted in his petition to reframe the issue as a question of trial counsel's ineffectiveness in withdrawing the motion for a mistrial, it is abundantly clear that the heart of the issue is the same. Moreover, were we to independently analyze Defendant's claim of ineffective assistance of counsel, we would find that the underlying basis therefor lacks arguable merit, for the same reasons discussed by the Superior Court on direct appeal.

One issue of prosecutorial misconduct raised by Defendant in his direct appeal that was not addressed by the Superior Court on the merits was the issue of the prosecutor's alleged inappropriate display of an unredacted document to the jury during closing arguments. The Commonwealth concluded that it was "not able to conduct a meaningful review of this claim of prosecutorial misconduct" because Defendant had failed to develop the record on this issue. *Suero*, <u>supra</u> at 8. While this issue was thus clearly not previously litigated on direct review, Defendant has failed to develop the record on this issue any further on collateral review, and accordingly we find that we are likewise unable to address this issue on the merits.

For all of these reasons, we find that Defendant is entitled to no relief on the issue of trial counsel's alleged ineffectiveness in withdrawing the motion for a mistrial.

**D.** **Defendant is not entitled to relief in this matter based upon a claim of cumulative error.**

Finally, Defendant makes a claim for relief based upon alleged cumulative error during the course of the trial. A claim of cumulative error is a basis upon which a defendant may be afforded post-conviction collateral relief. *Commonwealth v. Johnson*, 966 A.2d 523 (Pa. 2009). In order for a defendant to be afforded relief on this basis, it must be determined that the cumulative prejudicial effect of multiple errors, each of which alone did not prejudice the defendant, is such that the defendant was prejudiced. *Commonwealth v. Koehler*, 36 A.3d 121 (Pa. 2012). However, where a defendant's multiple allegations of error are rejected on the basis of the other two prongs of the *Pierce* test, there is no basis upon which to accumulate errors. *Commonwealth v. Sattazahn*, 952 A.2d 640 (Pa. 2008).

Because we have rejected each of Defendant's claims on these alternative bases, Defendant can be afforded no relief on an accumulation claim. *Id*. Moreover, based upon our review of the issues raised by Defendant herein, and upon our consideration of the entire record in this matter, we conclude that Defendant did in fact receive a fair trial, and that the effect of any errors that may have occurred during the trial was harmless. Defendant is not entitled to a new trial.

**WHEREFORE**, we enter the following:

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY
COMMONWEALTH OF PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA   :
                                         :     No.  C-48-CR-01552-2013
          v.                   :

ROGEL I. SUERO,               :

          Defendant.     :

## OPINION OF THE COURT

**AND NOW**, this 24th day of July 2017, upon consideration of Defendant's petition for post-conviction relief pursuant to the Pennsylvania Post Conviction Relief Act, it is hereby **ORDERED** that the petition is **DENIED** in its entirety.

Defendant is hereby advised that he may file an appeal of this Order within thirty (30) days of the date thereof.

**BY THE COURT:**

*Paula A. Roscioli*
**PAULA A. ROSCIOLI, J.**

2017 JUL 24 PM 3: 05
CLERK OF COMMON PLEAS
CRIMINAL DIVISION
NORTHAMPTON COUNTY, PA
FILED